UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM CODY CARTER,<br><br>  Plaintiff,<br><br>v.<br><br>CITY OF CARLSBAD, et al.,<br><br>  Defendants. | Case No. 10cv1072-IEG (BLM)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL**<br><br>**[ECF No. 29]** |

Pending before the Court is Plaintiff's motion to compel production of documents. ECF No. 29. Having considered the briefing filed by the parties and all applicable law, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion.

### FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of an October 31, 2009 incident involving Plaintiff and officers of the Carlsbad Police Department.  In his First Amended Complaint ("FAC"), Plaintiff explains that he, his fiancee, and four other friends went to the Coyote Bar & Grill in Carlsbad on October 31, 2009.  FAC ¶ 12.  When Plaintiff was denied entrance due to overcrowding, he went around to the back patio to explain the situation to his friends, who already had entered the bar.  Id. ¶ 13.  Plaintiff's fiancee, Megan, and two other friends decided to leave with Plaintiff, and they set off walking along the edge of the parking lot next to the bar.  Id.

1       As they were walking, Plaintiff and one of his friends were involved in a loud
2 conversation. Id. ¶ 14. When the group reached the sidewalk and was preparing to cross
3 a set of train tracks, Megan heard a voice yell "Stop!" Id. The others did not hear anything.
4 Id. Then, three police officers approached and Officer Meritt called out "Hey stupid!" Id.
5 Plaintiff had his back to the officers and did not notice their approach. Id. When he did
6 finally start to turn around, Officer Meritt shot him in the chest with his taser, causing
7 Plaintiff to fall backward and hit his head on the sidewalk. Id. ¶ 15.
8       Despite the fact that Plaintiff was bleeding out of his ears and unconscious, Officer
9 Meritt would not allow anyone, including an Emergency Medical Technician passerby, to
10 assist Plaintiff, who waited approximately fifteen minutes for an ambulance to arrive. Id.
11 ¶¶ 15-16. Plaintiff suffered a fractured skull, a concussion, and tinnitus. Id. ¶ 17. Fluid
12 continues to leak from his right ear, in which he also has suffered approximately fifty
13 percent hearing loss. Id.
14       In his FAC, brought under 42 U.S.C. § 1983, Plaintiff alleges use of excessive force,
15 failure to train, failure to supervise, battery, negligence, and violation of California Civil Code
16 § 52.1.
17       The instant discovery dispute revolves around requests for production of documents
18 served on the City of Carlsbad (City) by Plaintiff on September 7, 2010. Pursuant to a
19 briefing schedule issued by the Court (ECF No. 27), Plaintiff filed his motion to compel on
20 January 19, 2011 (ECF No. 29). Defendants opposed the motion on January 26, 2011 (ECF
21 No. 32), and Plaintiff filed a reply brief on January 28, 2011 (ECF No. 36). The Court then
22 took the matter under submission. See ECF No. 27.

23 <center>**LEGAL STANDARD**</center>

24       The Federal Rules generally allow for broad discovery, authorizing parties to obtain
25 discovery regarding "any nonprivileged matter that is relevant to any party's claim or
26 defense." Fed. R. Civ. P. 26(b)(1). Also, "[f]or good cause, the court may order discovery
27 of any matter relevant to the subject matter involved in the action." Id. District courts have
28 broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296

page

1  F.3d 732, 751 (9th Cir. 2002). Similarly, district courts have broad discretion to limit
2  discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be
3  obtained from some other source that is more convenient, less burdensome, or less
4  expensive." Fed. R. Civ. P. 26(b)(2)(C). Limits also should be imposed where the burden
5  or expense outweighs the likely benefits. Id. When a party fails to permit inspection as
6  requested under Rule 34, a motion to compel is appropriate. Fed. R. Civ. P. 37(a)(3)(B)(iv).

## DISCUSSION

8  In his motion, Plaintiff seeks to compel production of documents that the City
9  withheld in responding to Plaintiff's Request for Production of Documents, Set One, Nos. 2,3,
10 6 & 7. Mem. P. & A. Supp. Mot. to Compel (P.'s Mem.) at 7-8. Specifically, Plaintiff moves
11 to compel production of the portions of the Carlsbad Police Department's Internal Affairs
12 Investigation report on the October 31, 2009 incident that the City redacted and any
13 documents related to investigations of, or disciplinary actions taken against, Officer Merritt.
14 Id. at 7-8, 16. Defendants contend that Plaintiff is not entitled to this information. Defs.'
15 Opp'n at 3.

16 As an initial matter, Defendants raised a timeliness objection when the parties initially
17 contacted the Court regarding their discovery disputes. The Court considered the objection,
18 but exercised its discretion to allow Plaintiff to file the motion. Both parties subsequently
19 addressed in their briefs the question of whether Plaintiff's motion was filed in a timely
20 manner. Defs.' Opp'n at 5-6; Pl.'s Reply at 4-5. The Court again has considered the
21 arguments but finds it appropriate to address the merits of Plaintiff's motion to compel.

### A. The Internal Affairs Investigation Report

23 Plaintiff served the City with requests for production seeking documents concerning
24 "all investigations taken regarding MERITT'S use of the taser against CARTER on October
25 31, 2009, conducted by the Carlsbad Police Department" and "the Internal Affairs
26 investigation of the October 31, 2009, use of a taser on CARTER by MERITT." Decl. of Att'y
27 Charles L. Pratt Supp. Mot. to Compel Prod. of Doc. (Pratt Decl.), Ex. 1 at 4 (Request for
28 Production, Set One, Nos. 6 & 7). In response, the City served all responsive documents,

including the internal affairs report regarding the October 31, 2009 incident.  Defs.' Opp'n at 3.  However, the City redacted the "conclusion" section of the report, which consists of two sub-sections entitled "analysis" and "findings."  Id.  Defendants assert that Plaintiff is not entitled to these evaluative portions of the report because they are protected by the official information privilege.  Id. at 6-7.  Plaintiff disagrees, arguing that the requests seek relevant information and that a weighing of the factors set forth in Kelly v. City of San Jose, 114 F.R.D. 653 (N.D. Cal. 1987) favors disclosure.  Pl.'s Mem. at 10-12.  Further, Plaintiff submits that Defendants failed to satisfy the procedural requirements for invoking the official information privilege.  Id. at 13-14.

"Federal common law recognizes a qualified privilege for official information." Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033 (9th Cir. 1990) (citing Kerr v. United States Dist. Ct. for N.D. Cal., 511 F.2d 192, 198 (9th Cir. 1975), aff'd, 426 U.S. 394 (1976)). The party asserting the privilege has the initial burden of proving the applicability of the privilege.  See Kelly v. City of San Jose, 114 F.R.D. 653, 669-71 (N.D. Cal. 1987); see also Hampton v. City of San Diego, 147 F.R.D. 227, 230 (S.D. Cal. 1993) ("Through this opinion, this court is hereby joining the Northern District's and Central District's procedures outlined in Kelly v. City of San Jose, 114 F.R.D. 653 (N.D. Cal. 1987) and Miller v. Pancucci, 141 F.R.D. 292 (C.D. Cal. 1992) for invoking the official information privilege"); Stewart v. City of San Diego, 2010 WL 4909630, at *1 (S.D. Cal. 2010) (applying Kelly).  A party seeking to invoke the official information privilege in response to a discovery request should serve a timely discovery response specifically identifying the official information privilege as a basis for its objection.  Kelly, 114 F.R.D. at 669.  The objection must be accompanied by a declaration or affidavit "from a responsible official within the agency who has personal knowledge of the principal matters to be attested to in the affidavit or declaration." Id. The affidavit or declaration must include:

> (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality (if the agency has shared some or all of the material with other governmental agencies it must disclose their identity and describe the circumstances surrounding the disclosure, including steps taken to assure preservation of the confidentiality of the material), (2) a

statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made.

Id. at 670. Requiring the defendant to make this "substantial threshold showing" affords the plaintiff a fair opportunity to assess the defendant's privilege assertion and, if necessary, challenge it. Id. at 669-70.

If the plaintiff challenges the defendant's invocation of the official information privilege in a motion to the court, and explains why the information sought is relevant and why and how specifically the plaintiff would be harmed if it were not disclosed, the court "must weigh the potential benefits of disclosure against the potential disadvantages" to determine whether the privilege applies.[1] Sanchez, 936 F.2d at 1033-34. In civil rights

---

[1] The Kelly court provided a non-exhaustive list of factors (taken from Frankenhauser v. Rizzo, 59 F.R.D. 339 (E.D. Pa. 1973)) that may be considered when engaging in this weighing process:

(1) The extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information.

(2) The impact upon persons who have given information of having their identities disclosed.

(3) The degree to which government self-evaluation and consequent program improvement will be chilled by disclosure.

(4) Whether the information sought is factual data or evaluative summary.

(5) Whether the party seeking the discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question.

(6) Whether the police investigation has been completed.

(7) Whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation.

(8) Whether the plaintiff's suit is non-frivolous and brought in good faith.

(9) Whether the information sought is available through other discovery or from other sources.

(10) The importance of the information sought to the plaintiff's case.

Kelly, 114 F.R.D. at 663.

1  cases against police departments, the balancing test should be "moderately pre-weighted
2  in favor of disclosure." Soto v. City of Concord, 162 F.R.D. 603, 613 (N.D. Cal. 1995)
3  (quoting Kelly, 114 F.R.D. at 661). If the court concludes that the defendant failed to satisfy
4  its threshold burden, the court should order the defendant to disclose the requested
5  material. Kelly, 114 F.R.D. at 671. If the defendant made a sufficient threshold showing,
6  the court should "order an *in camera* review and offer defendant an opportunity to submit
7  a brief and additional supporting material (e.g., a supplemental affidavit)." Id.

8  The Court agrees with Plaintiff that the evaluative portions of the internal affairs
9  report are likely relevant to his claims. See Fed. R. Civ. P. 26(b)(1). Certainly the Carlsbad
10 Police Department's evaluation of whether or not Officer Meritt violated the department's
11 policy regarding use of force is relevant to whether Officer Meritt followed proper procedure
12 when confronting Plaintiff and whether it was reasonable for him to shoot Plaintiff with his
13 taser. Moreover, this information would not be available to Plaintiff from any other source.
14 See Fed. R. Civ. P. 26(b)(2)(C). The Court, therefore, concludes that the redacted portions
15 of the internal affairs report are relevant and, absent a sufficient invocation of privilege,
16 discoverable. See Kelly, 114 F.R.D. at 666 (concluding that internal affairs investigation
17 reports are "presumptively discoverable" upon a proper demonstration of relevance).

18 The next question then is whether the redacted information constitutes official
19 information, thus potentially making it subject to the privilege. The official information
20 privilege serves an important purpose, but it does not automatically apply to all evaluative
21 portions of internal affairs reports. As the Kelly court explained, courts that view evaluative
22 comments and opinions in internal affairs reviews as being protected by a near absolute
23 privilege "make a mockery of the whole concept of balancing." Kelly, 114 F.R.D. at 664.
24 In this case, Defendants support their assertion of the privilege with a declaration from the
25 custodian of records for the Carlsbad Police Department. See Decl. of Sergeant Greg Koran

Supp. Opp'n (Koran Decl.)². Therein, Sergeant Koran describes materials in the internal affairs report that would be covered by the official information privilege as including "opinions, conclusions and factual findings" as well as "critical and confidential self-analysis of the department and the department's officers." Id. ¶¶ 5-6. However, Sergeant Koran does not identify the specific statements in the contested report that he believes constitute privileged official information. As a result, this Court reviewed the redacted portions of Defendants' internal affairs report³ and finds that they contain little, if any, of the information Sergeant Koran describes as being subject to the official information privilege. The report contains a factual summary, but it contains no analysis of why some witnesses were deemed more credible than others. Likewise, the internal affairs officer makes a recommendation as to whether Officer Meritt should be found guilty of violating a Carlsbad Police Department policy or exonerated of the charge, but provides no explanation for his recommendation. In other words, the evaluative section of the report is utterly devoid of evaluation. Thus, Defendants have not established a basis for invoking the privilege.

Even assuming some portion of the redacted material is official information, the Court finds that Defendants did not properly invoke the privilege. As previously noted, Sergeant Koran's declaration should have included:

> (1) an affirmation that the agency generated or collected the material in issue and has in fact maintained its confidentiality (if the agency has shared some or all of the material with other governmental agencies it must disclose their identity and describe the circumstances surrounding the disclosure, including steps taken to assure preservation of the confidentiality of the material), (2) a statement that the official has personally reviewed the material in question, (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer, (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, (5) and a projection of how much harm would be done to the threatened interests if the disclosure were made.

---

² In the text of the motion, Defendants cite to the "Declaration of Captain Bill Rowland" (Defs.' Opp'n at 7), but the only declaration attached is that of Sergeant Greg Koran. The Court assumes the citation to the Rowland Declaration was a typographical error.

³ With the Court's permission (see ECF No. 35), Defendants filed the unredacted version of the internal affairs report under seal (see Decl. of Shiva Elihu Stein Supp. Opp'n, Ex. D and ECF No. 33) for the Court's *in camera* review.

Id. at 670. While Sergeant Koran satisfied the first two prongs of the Kelly procedure, his description of the threatened governmental and privacy interests almost mirrors the generalized assertion of harm rejected by the Kelly court. See Kelly, 114 F.R.D. at 664-66 (emphasizing that "a general claim of harm to the 'public interest' is insufficient to overcome the burden placed on the party seeking to shield material from disclosure"); see also Randolph v. City of East Palo Alto, 2007 WL 4170093, at *2 (N.D. Cal. Nov. 20, 2007) (explaining that "[i]f defendants actually want the Court to consider the official information privilege, they must submit more than [] merely conclusory allegations"). Sergeant Koran asserts that requiring the police department to disclose its findings and conclusions would "tend to hamper honest, candid, self-evaluation geared towards the betterment of services provided to the public by the police department," invade the privacy rights of the involved officers, and "adversely impact the improvement of training and programs." Koran Decl. ¶ 6. Yet as the Kelly court explained at length, there is no empirical evidence that disclosure would hamper officer honesty and, in fact, the opposite may be true. Kelly 114 F.R.D. at 664-66. It is particularly unclear from the Koran declaration how candid self-evaluation would be impacted in the instant case, given that the redacted portions of the internal affairs report contain no candid self-evaluation. See Chism v. Cnty. of San Bernardino, 159 F.R.D. 531, 534 (C.D. Cal. 1994) (rejecting declaration as insufficient that "fails to establish any nexus between the documents in question and the purported reasons for nondisclosure"). As for the officers' privacy rights, Defendants offer no explanation as to why disclosure pursuant to a carefully crafted protective order (such as the one already in place in this case) would not alleviate their privacy concerns. See Kelly, 114 F.R.D. at 670. Similarly, while Sergeant Koran does not make clear how disclosure would adversely impact training programs, this seems to be a concern directed at disclosure to the public, not disclosure only to Plaintiff's lawyers and/or Plaintiff under a narrow protective order. See id. at 662 (explaining that "it is important to emphasize that in many situations what would pose the threat to law enforcement interests is disclosure to the public generally, not simply to an individual litigant and/or her lawyer"). In sum, because Defendants offer no

1  projection of the extent of harm that would be caused by disclosure, or why such harm
2  could not be avoided by limiting disclosure under the existing protective order, the Court
3  finds that Defendants have failed to satisfy their threshold burden. See Kelly, 114 F.R.D.
4  at 669-70; Miller, 141 F.R.D. at 301-02 (overruling city and police officers' objections to
5  discovery requests, where defendants failed to satisfy threshold burden in their attempt to
6  invoke the official information privilege); Randolph, 2007 WL 4170093, at *2 (rejecting
7  defendants' official information privilege argument where defendants failed to meet
8  threshold requirements).

9  Here, Defendants have not made an adequate threshold showing of why, or to which
10 specific statements, the official information privilege should apply. See Kelly, 114 F.R.D. at
11 669. Moreover, the Court's review of the redacted information in light of the Kelly factors
12 indicates that disclosure is the correct result. The Court, therefore, **GRANTS** Plaintiff's
13 motion and orders the City to disclose the full conclusion section of the internal affairs report
14 (i.e. all previously redacted portions) to Plaintiffs by **February 22, 2011**. See id.
15 (concluding that a court has no choice but to order disclosure where the party seeking to
16 invoke the privilege fails to satisfied its burden of justification). The City shall do so
17 pursuant to the protective order (ECF Nos. 21 & 22) entered in this case.

18 **B.     Records From Officer Meritt's Personnel File**

19 Defendants also objected to Plaintiff's requests for any documents concerning
20 investigations of, or disciplinary actions taken against, Officer Merritt by the Carlsbad Police
21 Department. See Pratt Decl., Ex. 15 (Responses to Request for Production Nos. 2 & 3);
22 Defs.' Opp'n at 7-9. Defendants argue the requests are overbroad and unduly burdensome,
23 and seek information that is irrelevant and confidential. Defs.' Opp'n at 2, 8-9. Citing state
24 law, Defendants assert that peace officers have a Constitutional and statutory right to
25 privacy in their personnel files, which may be overcome only by a showing of a compelling
26 need for the information. Id. at 7-8 (citations omitted). Defendants submit that the Court
27 may consider the views of state authorities, particularly where, as here, there are no
28 inconsistent federal laws and the balancing of interests discussed in the state authorities is

1 similar to that dictated by Rule 26. Id. at 8. Defendants argue that, at most, Plaintiff is
2 entitled only to other investigatory or disciplinary records in Meritt's file concerning excessive
3 force within the last three years. Id. at 9 (citing Fisher v. Houser, 2010 U.S. Dist. Lexis
4 124519[4] for the three year limitation).[5]

5 Officer Meritt's asserted privacy right in his personnel file is not boundless. While
6 district courts "generally should give some weight to privacy rights that are protected by
7 state constitutions or state statutes," Kelly, 114 F.R.D. at 656, "these privacy interests must
8 be balanced against the great weight afforded to federal law in civil rights cases against
9 police departments," Soto, 162 F.R.D. at 616. "In cases involving section 1983 claims,
10 courts have repeatedly held that police personnel files and documents are relevant and
11 discoverable." Green v. Baca, 226 F.R.D. 624, 644 (C.D. Cal. 2005).

12 In this case, the Court finds that Plaintiff's need to obtain relevant discovery
13 supporting his civil rights claim, outweighs Officer Meritt's privacy interest in his personnel
14 file to the extent the file contains records referencing past alleged use of excessive force or
15 bearing on his credibility or truthfulness. These topics are relevant to Plaintiff's excessive
16 force claim and probative of whether Officer Meritt was properly trained and supervised.
17 Fed. R. Civ. P. 26(b)(1). In light of Plaintiff's prayer for punitive damages, the discovery
18 likewise may show whether Officer Meritt had malicious intent. See Hampton, 147 F.R.D.
19 at 229 (finding information regarding other instances of misconduct relevant to the punitive
20 damages claim because it "may lead to evidence of a continuing course of conduct reflecting
21 malicious intent"). The information also likely would not be available to Plaintiff from any
22 other source. See Randolph, 2007 WL 4170093, at *3; Stewart, 2010 WL 4909630, at 3.
23 Furthermore, Defendants' privacy concerns can be accommodated by producing the

---

[4] Defendants did not provide the full citation.

[5] Defendants also objected that Plaintiff never made a "good faith effort" to meet and confer regarding this request. Defs.' Opp'n at 3. Based on the materials before the Court, that appears to be true. However, in an effort to resolve the parties' disputes expeditiously, the Court will address this issue on the merits. Plaintiff is admonished to comply with the meet and confer requirements set forth in the Local Rules, should any additional discovery disputes arise in the future.

information subject to the protective order entered in this case. The Court, therefore, orders the City to disclose, on or before **February 22, 2011**, any records in its possession concerning the alleged use of excessive force by Officer Meritt or bearing on his credibility or truthfulness.

With respect to the scope of this disclosure, Defendants argue, pursuant to Fisher v. Houser, 2010 WL 4917066, at *3 (S.D. Cal. Nov. 23, 2010), that Plaintiff's request should be limited to the previous three years. Defs.' Opp'n at 9. As in this case, the plaintiff in Fisher alleged that police officers subjected him to excessive force. Fisher, 2010 WL 4917066, at *1. In ruling on a similar motion to the one before this Court, the Fisher court found that police department records relating to any alleged use of excessive force by the defendant officers were relevant and must be disclosed. Id. at *2. In so ordering, the court imposed no temporal limit. Id. The three year limit Defendants reference pertained to the disclosure of performance evaluations. Id. at *3. Because this Court is ordering Defendants to produce records concerning the alleged use of excessive force by Officer Meritt or bearing on his credibility or truthfulness, just as the court did in Fisher[6], Fisher counsels *against* imposing any limitation on the scope of the records to be searched. In the absence of any legal or factual justification for limiting the production of responsive documents to a specific time period, this Court imposes no time restriction on this order.

In regard to Plaintiff's requests for personnel records reflecting other investigations of, or disciplinary actions taken against, Officer Merritt, the Court has insufficient information before it to make a determination as to whether these records should be disclosed. These categories of records may lead to the discovery of admissible information, but they also may contain irrelevant documents. Because the parties are in the best position to evaluate the relevance and confidentiality of these records, the Court hereby puts the onus on the parties to further meet and confer as to these categories of documents in order to narrow the scope of documents submitted to the Court for *in camera* review. See Hampton, 147 F.R.D. at 229

---

[6] The Fisher court noted that documents related to other incidents of aggression, excessive force, or unnecessary force could lead to valuable credibility evidence. Fisher, 2010 WL 4917066, at *6.

(noting that counsel should make a good faith effort to resolve this type of dispute before asking the court to comb through voluminous personnel files because "[i]t is certainly not fair to the taxpayers of this country to have to pay the costs and expenditures of the federal courts for work that attorneys should be doing").

On or before **February 24, 2011**, Defendants shall provide Plaintiff with a log identifying each document responsive to Plaintiff's Request for Production Nos. 2 & 3, except those the Court already ordered to be produced, with enough information to allow Plaintiff to reasonably identify and challenge Defendants' withholding of the document. Specifically, Defendants shall generally follow the format of a privilege log by providing the following information for each item:

- document number
- date of creation of the document
- author of the document
- recipient(s) of the document
- type of document
- subject matter of the document
- the specific portion(s) of the document being objected to
- for each portion of the document, the legal objection to producing the document[7]

The parties shall meet and confer in good faith regarding the log by **March 3, 2011**. If the parties are unable to fully resolve their dispute, they shall concurrently file briefs regarding the discoverability of the remaining documents or portions of documents on or before **March 11, 2011**. By the same date, Defendants shall provide the Court with its log and the disputed documents so that the Court may conduct an *in camera* review.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion to compel. As set forth above, the Court orders as follows:

---

[7] The Court expects Defendants to carefully consider the basis for its objections and to bear in mind that their failure to serve a privilege log with their discovery responses, or to address in their opposition to Plaintiff's motion to compel their objections based on the attorney-client privilege, the work product doctrine, and the official information privilege (as to Officer Meritt's personnel file), may constitute a waiver of those privileges. See Burlington Northern & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont., 408 F.3d 1142, 1149 (9th Cir. 2005). In addition, the Court believes it is unlikely that either the attorney-client privilege or the work product doctrine would apply to records maintained in a police officer's personnel file.

1. The City is ordered to disclose the full "conclusion" section of the internal affairs report (i.e. all previously redacted portions) to Plaintiffs by **February 22, 2011**. The City shall do so pursuant to the protective order (ECF Nos. 21 & 22) entered in this case.

2. On or before **February 22, 2011**, the City also is ordered to disclose any records in its possession concerning the alleged use of excessive force by Officer Meritt or bearing on his credibility or truthfulness. The City shall do so pursuant to the protective order (ECF Nos. 21 & 22) entered in this case.

3. On or before **February 24, 2011**, Defendants shall provide Plaintiff with a log identifying each document responsive to Plaintiff's Request for Production Nos. 2 & 3, except those the Court already ordered to be produced, with each entry setting forth the information listed in Section B above.

4. The parties shall meet and confer in good faith regarding the log by **March 3, 2011**.

5. If the parties are unable to fully resolve their dispute, they shall concurrently file briefs regarding the discoverability of the remaining documents on or before **March 11, 2011**. By the same date, Defendants shall provide the Court with its log and the disputed documents so that the Court may conduct an *in camera* review.

**IT IS SO ORDERED**.

DATED: February 15, 2011

_____
BARBARA L. MAJOR
United States Magistrate Judge